IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIGITAL DIAGNOSTICS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C.A. No. 24-1179 (MN) |
| | ) |
| JUSTIN WHITE and AEYE HEALTH INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Margaret M. DiBianco, DIBIANCA LAW, LLC, Wilmington, DE; Christopher M. Michalik, Heidi E. Siegmund, MCGUIRE WOODS LLP, Richmond, VA – Attorneys for Plaintiff

William R. Dunny, Tyler E. Cragg, POTTER ANDERSON & CORROON LLP, Wilmington, DE – Attorneys for Defendant Justin White

Andrew C. Mayo, Brian A. Biggs, Samuel M. Gross, ASHBY & GEDDES, Wilmington, DE – Attorneys for Defendant AEYE Health Inc.

August 18, 2025
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendants' motions to dismiss the First Amended Verified Complaint ("Amended Complaint") for failure to state a claim. (D.I. 64, 67). For the reasons set forth below, the motions are DENIED.

**I.   BACKGROUND**

   **A.   The Parties and the Dispute**

This case centers on a trade secrets dispute between one company, its former employee, and the employee's new employer. Plaintiff Digital Diagnostics Inc. ("Plaintiff," "Digital," or "DDx") "is a healthcare technology company that designs, builds, and implements autonomous AI systems that can diagnose disease." (D.I. 58 ¶ 17). Digital is incorporated in Delaware and headquartered in Coralville, Iowa. (*Id.*).

In January 2022, Digital hired Defendant Justin White ("White") as a sales representative. (*Id.* ¶ 40). As part of his job duties, "White was responsible for using [Digital's] proprietary sales and marketing strategies to develop, grow, and maintain customer relationships." (*Id.*). White worked remotely out of his home in the suburbs of Los Angeles, California. (*Id.* ¶¶ 18, 42). According to the Amended Complaint, White was a subpar employee. (*Id.* ¶ 50). He "consistently failed to meet DDx's sales quotas," received poor performance reviews, and, after "several meetings with White to discuss [his] lackluster performance and consistent failures to meet his sales targets," Digital dismissed him on August 5, 2024. (*Id.*). White's termination and reciprocal severance package were memorialized in a Confidential Separation Release Agreement. (*Id.* ¶ 51).

Minutes after being fired, White logged onto the company's server and saved hundreds of sensitive proprietary documents – trade secrets, according to Digital – to an external hard drive

("the Hard Drive"). (*Id.* ¶¶ 58-65). White continued to download Digital materials to the Hard Drive over the next three days, from August 5 to 7. (*Id.*).

Armed with Digital's trade secrets, White immediately began searching for a new job. (*Id.* ¶¶ 66-68). The Amended Complaint alleges that White leveraged Digital's confidential information to secure employment with Defendant AEYE Health, Inc. ("AEYE," and, with White, "Defendants"), a Delaware-incorporated, New York-headquartered technology company that, like Digital, develops diagnostic health care technology such as a "1-minute AI diabetic eye exam at any point of care." (*Id.* ¶¶ 19, 66-70). According to Digital, "AEYE is a direct competitor." (*Id.* ¶¶ 4, 19, 71).

The Amended Complaint alleges that White applied to AEYE on August 7, had his first interview on August 13, completed five more interviews by August 28, and was hired on September 10. (*Id.* ¶¶ 66-67, 73-75). During that process, White told AEYE and its leadership that he could "join AEYE Health and immediately add value while leveraging what [he] learned working at Digital," including by delivering AEYE "a few dozen hot leads," "actionable market intelligence," and "a network of healthcare executives who have interest in autonomous AI adoption." (*Id.* ¶¶ 7, 73-74). AEYE's executives were specifically intrigued by those representations, and they used the interview process to "validate White's [proffered] leads" and "get a list of the bigger ones from [him]." (*Id.* ¶ 74) (citation modified). According to the Complaint, AEYE's CEO, Chief Operating Officer, and General Manager "repeatedly discussed how White could leverage the information he gained from his time at DDx to benefit AEYE." (*Id.* ¶¶ 7, 11) ("Tellingly, [AEYE management] did not object to the use of this DDx information, but instead discussed how AEYE could best use it.").

Shortly upon being hired, White provided AEYE with more than 5,500 customers leads, which, according to AEYE's Marketing Manager, were "all 100% new contacts we didn't have before." (*Id.* ¶ 108). White and AEYE also began using Digital's trade secrets for their own benefit. (*Id.* ¶¶ 115, 119, 125, 135, 139). Digital claims, for example, that on three specific occasions in September and October 2024, White accessed the Hard Drive in order to review Digital's sales presentations, business strategies, and revenue calculators, and later contacted at least one of Digital's customers. (*Id.*).

In the meantime, Digital became suspicious. It found evidence that White had taken documents on his way out of the company. (*Id.* ¶¶ 12, 120). Digital became even more concerned when it learned that White had been hired by a competitor. (*Id.*). That led Digital to confront White and AEYE by letter on October 4, 2024. (*Id.* ¶¶ 78-79 & Ex. D). After trading further correspondence in an unsuccessful effort to resolve the issue, Digital sued White in this Court on October 22, 2024. (*Id.* ¶¶ 14-16, 80-94 & Exs. E-H).

B.     **Procedural History**

The original complaint asserted causes of action for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, conversion, and computer fraud against White ("the Original Complaint"). (D.I. 1). Digital also moved for a preliminary injunction and temporary restraining order against White to make him (i) stop using or disclosing Digital's trade secrets, (ii) cease using his old Digital-issued devices and accounts, (iii) return all devices, accounts, and trade secrets to Digital, and (iv) give up his employment at AEYE. (D.I. 5). Digital additionally sought to conduct expedited discovery into whether White was continuing to wrongfully use Digital's trade secrets. (D.I. 7). Those motions were briefed and the Court held a hearing on November 5, 2024. (D.I. 6, 8, 21, 48). A week later, the Court granted Digital's motion for expedited discovery and granted-in-part its motion for a preliminary injunction, ruling that

3

White must refrain from using Digital's trade secrets and computers but that he could continue to work at AEYE.  (D.I. 24; D.I. 57 ¶ 1).

The parties proceeded to engage in expedited discovery, which was completed on January 30, 2024.  (D.I. 37).  As part of that process, Digital served then-third-party AEYE with a subpoena on November 14, 2024.  (D.I. 29).  On December 4, 2024, White answered the Original Complaint.  (D.I. 33).  On January 24, 2025, Digital took White's deposition.  (D.I. 38).  On May 7, 2025, Digital moved to amend the Original Complaint, seeking to bolster its factual allegations and add AEYE as a defendant.  (D.I. 51).  White opposed the motion on May 21, 2025.  (D.I. 56).

On May 22, 2025, the Court granted Digital's motion to amend.  (D.I. 57 ¶ 2).  Pursuant to that order, on May 28, 2025, Digital filed the Amended Complaint, which asserted counts for violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839, and Iowa Uniform Trade Secrets Act ("IUTSA"), I.C.A § 550, *et seq.*, against both Defendants, as well as claims for breach of contract, breach of fiduciary duty, conversion, and computer fraud against White.  (D.I. 58).

On July 18, Defendants moved to dismiss the two trade secrets counts for failure to state a claim.  (D.I. 64, 67).  Briefing was completed on August 8, 2025.  (D.I. 65, 67, 70, 71, 72, 74).  The Court now addresses the motions.

## II.  LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Nonetheless, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim

4

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Lutz*, 49 F.4th at 327. The Court does not accept "bald assertions," "unsupported conclusions and unwarranted inferences," *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016), or allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *Connelly*, 809 F.3d at 790 (citation omitted). Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

### III. DISCUSSION

"To prevail on a claim for misappropriation of trade secrets under both the DTSA and the [I]UTSA, a plaintiff must establish (1) the existence of a trade secret, (2) that the trade secret was protectible, and (3) that it was misappropriated by the defendant." *Elmagin Cap., LLC v. Chen*, No. 22-2739, 2024 WL 2845535, at *2 (3d Cir. Mar. 21, 2024); *Choreo, LLC v. Lors*, 777 F. Supp. 3d 947, 965 (S.D. Iowa 2025). Defendants essentially challenge the first and third elements here.

First, they argue that the files White took from Digital, saved on his Hard Drive, and brought to AEYE were not "trade secrets" because they were client target lists that could be compiled from publicly available data. (D.I. 65 at 9-11; D.I. 67 at 3-4). Second, Defendants contend that the Amended Complaint fails to allege that AEYE "misappropriated" any trade secrets because AEYE did not improperly acquire or use the materials that belonged to Digital. (D.I. 65 at 15-17; D.I. 67 at 4-6). The Court addresses each in turn.

#### A. Trade Secrets

"Under the federal [Defend Trade Secrets] Act, information is a trade secret if (1) its owner has taken reasonable measures to keep it secret and (2) its economic value comes partly from the

5

fact that competitors do not know it." *JPMorgan Chase Bank, N.A. v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 375 (D. Del. 2025) (internal quotation marks omitted); *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 381 (3d Cir. 2021); 18 U.S.C. § 1839(3). Here, the Amended Complaint sufficiently pleads both.

First, Digital alleges that it takes numerous "security measures" to protect its proprietary information, such as through non-disclosure agreements with third-parties, confidentiality agreements for in-house employees, and cyber security protocols for its hardware and software. (D.I. 58 ¶¶ 31-39). Defendants do not dispute this in their motions. That satisfies the first prong. *See, e.g.*, *JPMorgan*, 765 F. Supp. 3d at 375; *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704 (MAK), 2021 WL 9276577, at *2 n.3 (D. Del. Sept. 10, 2021).

Second, the Amended Complaint alleges that the proprietary information at issue is "highly unique and valuable" and "is not generally known to or readily ascertainable by others outside of DDx." (D.I. 58 ¶¶ 41, 129, 132). In a section titled "White's Misappropriation of DDx's Trade Secrets," the Amended Complaint outlines the hundreds of confidential documents it claims White stole, "including spreadsheets, word documents, PowerPoint presentations, PDFs, and other files." (*Id.* ¶¶ 50-65). Most pertinently among them were (i) "[a] proprietary draft tool quantifying the potential economic value potential customers may experience through the use of DDx's diagnostic software;" (ii) a "sales presentation that guides DDx sales representatives through all aspects of DDx's proprietary sales process, including how to locate prospects, how to pitch [DDx's marquee product], and how to follow through to successfully close deals;" and (iii) "[c]ustomer contracts, contract templates, and contract redlines." (*Id.* ¶ 63). Described succinctly, they are "a trove of information about customers and the market, giving [the company] a competitive edge that would be dulled if everyone else knew them." *JPMorgan*, 765 F. Supp. 3d at 375. Such materials are

6

precisely the types of "customer lists, customer pricing, contract terms . . . marketing plans, market analyses, . . . sales prospect pipelines . . . sales playbook[s], marketing and sales projections . . . and business plans" that courts routinely find to qualify as trade secrets. *Allscripts*, 2021 WL 9276577, at *2 n.3. They are undoubtedly protected by the DTSA.

Defendants nevertheless respond that the Amended Complaint "does not claim any of those files were shared with AEYE." (D.I. 65 at 9; D.I. 67 at 3-4). Instead, they contend that White only handed over two customer identification documents, a Contacts File and a Target List, neither of which are trade secrets. (D.I. 65 at 10; D.I. 67 at 5-6).

The first premise of AEYE's argument – that White only gave it a few select client files – bleeds into the misappropriation analysis and is addressed in detail in the next section. As to the second part, even assuming Defendants are right that customer target lists culled from public sources cannot be trade secrets – a proposition the Court doubts but need not evaluate for the reasons that follow – that still would not be enough to defeat Digital's trade secrets claims. *Cf. Mallet*, 16 F.4th at 386 ("[I]nformation will not necessarily be deprived of protection as a trade secret because parts of it are publicly available. A confidential compilation and organization of public information can amount to a trade secret."); *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 85 (D. Del. 2003) (Jordan, J.) ("The contention that the customer list is not confidential information is wholly at odds with the evidence. It is precisely the type of business information which is regularly accorded trade secret status.").

That is because the Amended Complaint alleges that the Contacts File and Target List comprised more than just a customer roster. (D.I. 58 ¶¶ 9, 104). They also "contained two versions of draft business value modeling tools, which DDx has developed to help customers assess the potential financial benefits of buying DDx's Products." (*Id.*). That file was allegedly forwarded

to several executives at AEYE, including its Chief Operating Officer and Marketing Manager, as well as to White's newly issued AEYE computer. (*Id.* ¶¶ 10, 105-10, 118, 125). The Amended Complaint goes on to explain that "AEYE and White could use the proprietary business value modeling tools DDx had painstakingly developed to convince customers to invest in AEYE's products rather than DDx's." (*Id.* ¶ 109). Accordingly, even if White did only share those two documents with AEYE, they are adequately alleged to be trade secrets.[1]

And, finally, after White became an AEYE employee, he specifically knew that accessing Digital's proprietary information or using it at AEYE was improper. (*Id.* ¶¶ 51, 68, 141, 159). The very terms of his Release Agreement forbid it. (*Id.* ¶¶ 51-54). His conduct therefore constitutes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). It also implicates AEYE. *See Am. Int'l Grp., Inc. v. Dell Wood Ins. Grp., LLC*, No. 24-4456 (EP), 2025 WL 937745, at *8 (D.N.J. Mar. 28, 2025) ("[T]he alleged conduct by [the employee] leads to the reasonable inference at the motion to dismiss stage that [the defendant company] did in fact acquire these materials."). Accordingly, "it is plain that the Defendants acquired [Plaintiff's] trade secrets knowing of their confidential nature." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 912 (3d Cir. 2021).

B. **Misappropriation**

Defendants next contend that the Amended Complaint fails to allege misappropriation. (D.I. 65 at 15-17; D.I. 67 at 3-4). "There are three ways to establish misappropriation under the

---

[1] White renews his objection that the Amended Complaint provides a "mischaracterization of the files that [he] actually provided to AEYE." (D.I. 67 at 4). If that is true, it will be borne out in discovery. But, as already stated in the Court's Order on the Motion to Amend, that argument "principally involves issues of fact not fit for adjudication at the pleading stage." (D.I. 57 ¶ 2). The Court thus rejects that argument at this juncture.

DTSA: improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood*, 999 F.3d at 907-08; 18 U.S.C. § 1839(5). AEYE argues that, even if it did receive Digital's trade secrets from White, it did not do so "improperly," and, moreover, that the Amended Complaint fails to allege "that AEYE has used [them]." (D.I. 65 at 16). The Amended Complaint makes overwhelming allegations of improper acquisition and use, however.

As to acquisition, Digital claims that, predicated on White's promises to "add value while leveraging what [he] learned working at Digital," AEYE executives pursued White with the aim of magnifying their customer base, equipped with the direct knowledge that he had previously worked for Digital. (D.I. 58 ¶¶ 73-76). Indeed, the Amended Complaint alleges that AEYE management "repeatedly discussed how White could leverage the information he gained from his time at DDx to benefit AEYE," and then followed through by accepting White's list of more than 5,500 customer contacts – "all 100% new." (*Id.* ¶¶ 7, 108-10).

Defendants attempt to dismiss these allegations as unsupported speculation. (D.I. 65 at 15-16; D.I. 72 at 9). But they are circumstantial, not conclusory, and precisely the type of allegations the Third Circuit has held to be sufficient in trade secret misappropriation cases. *See Oakwood*, 999 F.3d at 910; *Elmagin*, 2024 WL 2845535, at *2 ("Rarely can a plaintiff demonstrate misappropriation through direct evidence. Instead, a plaintiff may rely on circumstantial evidence.") (internal citation omitted). To be sure, on the back of the Amended Complaint's allegations, "it is reasonable to infer that [AEYE] obtained much more detailed access to [Digital's] trade secret information through [White], given the allegations about [White's] extensive knowledge of [the trade secrets], the timing of [AEYE's] recruitment of him, and [White's] own [testimony] describing his work at [Digital]." *Oakwood*, 999 F.3d at 911-12.

9

As for use without consent, the Amended Complaint alleges that, *since being hired as an employee at AEYE*, White has continued to use Digital's trade secrets to his and AEYE's benefit. (*Id.* ¶¶ 115, 119, 125, 135, 139). That too is sufficient to state a claim against AEYE, because an employee's improper use of his former employer's trade secrets at his new company constitutes a violation on behalf of the company. *See* 18 U.S.C. § 1839(5)(B); *Oakwood*, 999 F.3d at 912; *Allscripts*, 2021 WL 9276577, at *2 n.3; *see also Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017).

For example, on September 12, two days after being hired, White "accessed several hundred files and folders" of Digital's misappropriated trade secrets, including "[n]umerous sales presentations for various DDx customers [that were] protected by NDAs," a "highly confidential and detailed explanation of the scientific, clinical, and commercial differences between [DDx's lead product] and a competitor's product," and "a presentation that details the structure of DDx's various teams, their key goals, specific states targeted for advocacy and progress made, key details of ongoing real world evidence studies and the participants in those studies, and planned journal submissions." (D.I. ¶ 97). Then, on September 30, 2024, White again interacted with Digital files stored on the Hard Drive, "including Trade Secret Information concerning sales pitches and revenue calculators." (*Id.* ¶¶ 112-114). And, once more, on October 2, 2024, "White emailed a prospective DDx customer that he serviced for DDx from his AEYE email account." (*Id.* ¶ 119).

Together, these allegations claim that White and AEYE "t[ook] advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value." *Oakwood*, 999 F.3d at 910; *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, No. 19-2227 (JHS), 2024 WL 4344742, at *15 (D. Del. Sept. 30, 2024). The Amended Complaint plausibly

10

states a claim for trade secret misappropriation against both AEYE and White, and the motions to dismiss will be denied.

## IV. CONCLUSION

For the reasons above, the Court will deny Defendants' motions to dismiss the Amended Complaint (D.I. 64, 67). An appropriate order will follow.